## Ferry *vs.* Street.

### APPEAL FROM FRANKLIN CIRCUIT.

Case 34.

The owner of a slave residing in Kentucky permitted the slave to be taken to and remain in the state of Pennsylvania for a period of more than six months, with a knowledge of the law of that state, of 1780. Held, that the slave was entitled to freedom, and that it could be asserted after the return of the slave to Kentucky. (*See Stewart v. Oakes*, 5 *Har. & Johnson*, 107.)

Judge CRENSHAW delivered the opinion of the court:

January 21.
Case stated.

In the spring of the year 1838, Clarissa, a woman of color, the property of Mrs. Trigg, at the instance of her mistress, accompanied Mrs. Alexander to the city of Philadelphia. The object of Mrs. Alexander

in visiting that city was to consult physicians there, upon the subject of her eyes, which were much diseased, and, if necessary and advisable, to place herself, under their treatment. Mrs. Alexander being a near relative of Mrs. Trigg, and being in a very helpless condition in consequence of defective sight, and Clarissa being a very faithful and trust-worthy servant, Mrs. Trigg determined to send Clarissa with Mrs. Alexander to Philadelphia, to take care of, and wait upon her. But before they departed on their journey Mrs. Trigg sent for Jeptha Dudley to consult him in regard to the laws of Pennsylvania, and what effect they might have upon slaves sent by their owners into that state. Dudley visited Mrs. Trigg according to her request, and informed her that he was no lawyer, but his impression was, that if Clarissa should remain in Pennsylvania as long as six months she would be entitled to her freedom. Mrs. Trigg, as Dudley states, then said that she had no calculation that Mrs. Alexander would return in less than a year, and she intended to send Clarissa with her to remain until Mrs. Alexander's return, because she could not trust Mrs. Alexander with any other person; that she did not believe Clarissa would avail herself of the laws of Pennsylvania, because she had a husband and children in Kentucky, and because Clarissa knew that she was to be free at her (Mrs. Trigg's) death; that Clarissa, having been the patient and attentive nurse of Major Trigg in his last illness, he desired her and her child to be purchased by Mrs. Trigg and liberated at her death, and that she had promised to do so.

Mrs. Alexander and Clarissa departed for Philadelphia, and Clarissa remained there more than six months. She then returned to Kentucky according to the united wish of herself and Mrs. Trigg, and went again into her service. After this, Mrs. Trigg having occasion to borrow a sum of money from Miss Thompson, (now Mrs. Ferry,) her adopted daughter, who seems to have resided with her, executed to her an

absolute bill of sale for Clarissa. Dudley states, that notwithstanding the absolute character of the bill of sale, it was intended only as an evidence to Miss Thompson of the debt, and to secure her in its payment, and that, before Mrs. Trigg's death she enjoined on him, who was to be her executor, to raise the means from her estate and discharge the debt to Miss Thompson, that Clarissa might be free. Mrs. Trigg made her will, liberating her other slaves, and making Miss Thompson her devisee. And Dudley says he would soon have raised the means, from the hire of the other negroes, to redeem Clarissa, had it not been for the interposition of Miss Thompson, who desired the liberated slaves to be discharged from further service. Although Miss Thompson was the devisee of Mrs. Trigg, the amount of property realized by her from the estate does not appear to have been sufficient to discharge the debt to Miss Thompson, of $500, which constituted the consideration of the bill of sale to her of Clarissa. It is proved that Miss Thompson was cognizant of the desire and intent of Mrs. Trigg to liberate Clarissa. But the only ground upon which Clarissa bases her right to freedom, necessary to be considered, is her remaining in Pennsylvania more than six months, when she accompanied Mrs. Alexander to Philadelphia.

There is some discrepancy in the testimony, in regard to the time which Mrs. Trigg expected Clarissa to remain in Philadelphia with Mrs. Alexander, and as to her willingness for her to remain as long as six months, but we think the proof establishes the fact not only that she expected Clarissa to remain as much as six months, but that she was willing for her so to remain. Clarissa, then, was not only sent to Pennsylvania by Mrs. Trigg, but remained there with her consent and approbation for the period of six months and longer, with a knowledge on her part of the laws of that state upon the subject of slaves remaining there longer than six months. And the question is, do these facts entitle Clarissa to her freedom, to

obtain which she has instituted this suit against Ferry and his wife, who was the late Miss Thompson, to whom the bill of sale mentioned was executed?

The statute of Pennsylvania, upon which Clarissa relies as conferring freedom upon her, was passed in the year 1780, and the 10th section of that act, being the one relied upon, is in the following words:

"*And be it further enacted,* that no man or woman of any nation or color, except the negroes or mulattoes who shall be registered as aforesaid, shall, at any time hereafter, be deemed, adjudged, or holden, within the territories of this commonwealth, as slaves or servants for life, but as free men and free women, except the domestic slaves attending upon delegates in congress from the other American states, foreign ministers, and consuls, and persons passing through, or sojourning in this state, and not becoming residents therein, and seamen employed in ships, not belonging to any inhabitants of this state, nor employed in any ship owned by any such inhabitant: *Provided,* such domestic slaves be not aliened, or sold, to any inhabitant, nor (except in the case of members of congress, foreign ministers and consuls,) retained in this state longer than six months."

Notwithstanding the many suits which have been brought to this court, prosecuted by persons of color to obtain their freedom, the precise question involved in this controversy has not been decided. It has been repeatedly held by this court, that a slave sent or permitted to go to a state where slavery is not tolerated, for a temporary purpose only, does not thereby acquire a right to freedom in Kentucky, but that, whatever might be his *status* or condition in the free state to which he had been sent or carried, not for residence but for a merely temporary purpose, his conditions as a slave, upon his return to Kentucky, would not be changed. *Rankin v. Lydia,* 2 *Marshall,* 476; *Bush's Representatives v. White,* 3 *Monroe,* 104; *Graham v. Strader,* 5 *B. Monroe,* 179; *Tom Davis v. Tingle,* 8 *B. Mon.,* 546–7; *Collins &c. v. America,* 9 *B. Monroe,* 565;

*Maria v. Kirby,* 12 *B. Monroe,* 542. In these cases the effect of the laws of other states, where slavery is not recognized at all, not even for a moment, was discussed and considered, and the consequence of a temporary or transient sojourn merely in such states, by the consent or approbation of the owner, was declared to be, not that the slave thereby became entitled to freedom in this state, but that upon his return here his condition should be as it was before such temporary sojourn—that of a slave.

But the question, whether a slave taken to a state where, although the inhabitants, whether black or white, are free, a privilege is extended to sojourners who come from slave states to hold their servants as slaves until a particular period, beyond which they are not allowed to do so, has not been decided. Or, in other words, if a state, into which a slave is voluntarily sent or carried by the owner, though for a temporary purpose only, has declared by statute that a slave remaining there a certain length of time shall be free, this court has not decided what shall be the effect or operation of such a law upon the condition of a person of color who may, in our courts, claim to be free by virtue of such a statute. This question has been expressly left open. This court, in the case of *Maria v. Kirby, supra,* say : "If any state were to enact that any slave brought within its limits, by the authority of the owner, and permitted by him to remain there six months, or three, or even one, should be free, there might be some reason for saying that such a law should operate permenently, even upon the rights of strangers, because they would have an opportunity of knowing its provisions and avoiding its consequences." And in the case of *Collins v. America, supra,* this court used this language : " These remarks, and the reasoning of this opinion, are made without reference to a case in which the foreign law may directly prohibit the introduction of a slave, or the retaining of him within the state for a certain period, and declare the consequences of either of these,

FERRY
vs.
STREET.

The owner
of a slave re-
siding in Ken-
tucky permit-
ted the slave to
be taken to and
remain in the
state of Penn-
sylvania for a
period of more
than 6 months,
with a knowl-
edge of the law
of that state, of
1780. Held,
that the slave
was entitled to
freedom, and
that it could be
asserted after
the return of
the slave to
Kentucky. (See
*Stewart v. Oakes,*
5 *Har. & John-
son,* 107.)

and we decide no question as to the effect of such a law."

In this case, the owner of Clarissa was apprised of what the law of Pennsylvania was when she sent her slave there, and determined to risk the consequences. That law was, that the slave might be brought there, and her condition be unchanged for the period of six months, but that if she remained there longer than that period of time she should be deemed a free woman. Mrs. Trigg was informed that such was the law of Pennsylvania, and she resolved to hazard the consequences; and we think, that in such a state of case, the condition of Clarissa in that state, after remaining in that state longer than six months, should follow her to Kentucky, and be her condition here. Under the circumstances, she was free there, and should be free here. This result was voluntarily incurred by her then owner, of which Mrs. Ferry was apprized, and having taken her bill of sale for Clarissa with a full knowledge of the circumstances, neither she nor her husband has any cause to complain, especially as she was also apprised that it was the intention of Mrs. Trigg that at her death, or as soon thereafter as the sum of $500 could be raised out of the means of her estate to redeem Clarissa, (the raising of which sum, according to Dudley, was prevented by herself,) Clarissa was to be free.

The authority not being accessible, we have not had an opportunity of examining the case of *Stewart v. Oakes,* 5 *Har. & Johnson,* 107, but we understand, from the reference to this case, made by *Wheeler in his Law of Slavery,* page 338, that the decision of the court in favor of the freedom of the plaintiff was based upon a statute of Virginia, similar in its provisions to that of Pennsylvania. Wheeler says the court held that a slave carried at different periods to Virginia by his owner, residing in Maryland, and employed working at his stone-quarries, the several pe-

riods amounting to one year, such slave was entitled to his freedom under the law of Virginia.

It is contended that the statute of Pennsylvania not having been marked as filed by the clerk of the circuit court, it ought not to be regarded by this court. It is, however copied into this record, and was manifestly used in evidence by the court below, and we think it should make no difference that it was not marked, "filed," by the clerk.

Wherefore, the decree is affirmed.

REED for appellant; HARLAN and CALLENDER for appellee.